JENNIFER WOERNER, D.M.D., M.D.

VERSUS

The BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL
COLLEGE and EDWARD F. JONES,
in his official capacity as
Assistant Vice-Chancellor for
Administration and Organizational Integrity
Louisiana State University Health
Science Center-Shreveport

SUIT NO. 630,929

FIRST JUDICIAL DISTRICT COURT

CADDO PARISH, LOUISIANA

SECTION: _____

## PETITION FOR DECLARATORY JUDGMENT
## AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

NOW INTO COURT comes, JENNIFER WOERNER, M.D., plaintiff herein who respectfully shows:

### I.

### PARTIES

1.

This is a civil action for declaratory judgment, a preliminary injunction and permanent injunctive relief.

2.

Plaintiff is Jennifer Woerner, M.D. ("Dr. Woerner") a person of the age of majority domiciled in Caddo Parish, Louisiana.

3.

Defendants are:

A.   THE BOARD OF SUPERVISORS OF THE LOUISIANA STATE UNIVERSITY AGRICULTURAL AND MECHANICAL COLLEGE ("BOARD OF SUPERVISORS"), the supervisory body of Louisiana State University Health Sciences Center-Shreveport ("LSUHSC-S"), a public medical school and medical facility doing business at 1501 Kings Highway, Shreveport, Louisiana, and funded by the State of Louisiana, can be served through Mary L. Werner, Chair of LSU Board of Supervisors, at 3810 West Lakeshore Drive, Baton Rouge, Louisiana, 70808; and

B.   EDWARD F. JONES, Assistant Vice-Chancellor for Administration and Organizational Integrity, Louisiana State University Health Science Center-Shreveport. ("Jones"). Jones, sued in his official capacity only, can be served at 1501 Kings Highway, Shreveport, Louisiana, 71103.

Downer, Jones

1

$450 PAID

JUN 16 2021

## II.

## STATEMENT OF FACTS

### 4.

Plaintiff Woerner is a Doctor of Dental Medicine with a Doctorate in Medicine, and employee of the Board of Supervisors System and a tenured member of the faculty at LSUHSC-S.

### 5.

Dr. Woerner was tenured July 1, 2019. She currently serves in the position of Associate Professor, Associate Dean of Academic Affairs, Fellowship Director of Craniofacial and Cleft Surgery, and holds the Tilakram and Bhagwanti Devi Distinguished Professorship in Cleft Lip & Palate Surgery and Training.

### 6.

In 2021, Dr. Woerner assisted female students, residents, and fellows in asserting complaints of sex discrimination and harassment that were occurring at LSUHSC-S in violation of Title IX of the Education Amendments of 1972, a law protecting students from discrimination based on sex in education programs or activities. On April 5, 2021, Dr. Woerner sent a lengthy email to LSU Title IX lead investigators Jeffrey Scott and Stephanie Rhodes reporting that female students, residents, and fellows at LSUHSC-S were being bullied, harassed, publicly humiliated and their gender complaints ignored. Specifically, Dr. Woerner reported the complainants' concerns that Chancellor G.E. Ghali ("Ghali") was aware of Title IX complaints and not taking appropriate action and that as to campus Title IX Coordinator, Ed Jones, "there is an overwhelming amount of conflict-of-interest present." Dr. Woerner also complained of the gender discrimination she was likewise experiencing and of the retaliation she was experiencing due to her participation in the protected activity of opposing the discrimination she was reporting.

### 7.

On April 13, 2021, Dr. Woerner filed a complaint of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR"). The filing of these complaints was made public through various news agencies, including, but not limited to, the Advocate, a statewide newspaper. Following the

2

complaint of Dr. Woerner against him and Mr. Jones, Chancellor Ghali consented to being temporarily removed from his duties as Chancellor only and voluntarily accepted leave with pay. Mr. Jones continued his duties as Assistant Vice-Chancellor for Administration and Organizational Integrity.

8.

On May 12, 2021, Dr. Woerner attended a meeting conducted by Mr. Jones and attended by Dr. Charles Fox, III, Vice Chancellor for Clinical Affairs. During this meeting Mr. Jones informed Dr. Woerner that he was initiating an investigation into alleged complaints by residents against her and placing her on administrative leave pending the investigation. Jones handed Dr. Woerner a letter stating that she was on administrative leave and was not to return to the campus. Jones' letter did not state the nature of the alleged complaints nor why it would be necessary to force Dr. Woerner to cease teaching and/or patient care pending investigation. Dr. Charles Fox stated that this was the protocol decided upon between him and Mr. Jones. Dr. Woerner was involuntarily removed from her duties as tenured faculty immediately following that meeting on May 12, 2021.

9.

Thereafter, all faculty members, including Dr. Ghali, and staff were sent an email that read as follows:

> As of yesterday afternoon, Dr. Jennifer Woerner has been placed on administrative leave. The conditions involve her to not be on our campus and to prohibit her from all clinical activities at any location. She is not to interact with any member of the Department of Oral and Maxillofacial Surgery for any reason except for urgent patient care related issues. Please report to me regarding any contact with Dr. Woerner during this period. Thank you. D. David Kim, Chair.[1]

This email was then followed by an in-person meeting, on May 13, 2021, with all the residents conducted by Dr. David Kim (Chair), Leisa Oglesby (Designated Institutional Officer), and Mr. Jones where the residents were verbally instructed that they were not allowed to communicate with Dr. Woerner for any reason, and they should report her if she reached out to them. Dr. Ghali then returned to work as a faculty member performing clinical patient care and began to perform Dr. Woerner's duties and/or participated in the reassignment of her cases to

---

[1] Plaintiff's Exhibit 1, screen shot of email to Department.

faculty members who supported his return as Chancellor. Dr. Woerner' s duties were re-assigned
and absorbed, in part, by Dr Ghali, the subject of her Title IX complaint, and Dr. Patel, a Dr. Ghali
supporter.

10.

Dr. Woerner, through counsel, objected to being placed on administrative leave and asked
to be returned to her duties.[2] To date she has not been returned to her duties.

11.

Following her objection through counsel, Dr. Woerner, in good faith, directly emailed Dr.
Charles Fox and Dr. David Lewis, requesting to return to clinical duties. Her email request read as
follows:

> I wanted to reach out to you because I have not heard anything, nor has my counsel,
> related to my administrative leave. It has been over 2 weeks, and despite contacting
> general counsel at BR, there has been no response related to receiving these
> complaints in writing, my due process, the investigation, or any possible timeline
> for return. My patients are anxiously awaiting, and my department has begun
> "redistributing" my direct referrals and current patients to two of the individuals I
> actually have filed complaints against. I'm not sure either of you are aware, but I
> just underwent a full audit by the LSBME and internally at every hospital I work at
> in late 2019, over 3-5 years of my records. This review found no CMS violations,
> no professional complaints of any kind, and no other compliance related concerns
> on my part. All of my outcomes metrics were found to be excellent as well. I
> understand the sensitivity of this situation, but I do not require the assistance of
> residents to run my clinical service and would like to request that I can return to
> clinical practice and continue training my fellow, Dr. Rachel Bishop as this is
> negatively impacting her training. I hope you look favorably upon my request.

This email request was then followed by an email response by Ed Jones, on June 3, 2021,
denying her request to return to work. Ed Jones' email response read as follows:

> You were placed on administrative leave with pay effective May 12, 2021 pending
> resolution of complaints filed against you by GME residents, and directed to refrain
> from any clinical duties. You request, via May 30, 2021 email to Dr. Lewis and Dr.
> Fox, to return to clinical practice while on administrative leave was forwarded to
> me for response. After review and consultation with the LSU General Counsel's
> office, your request to return to clinical practice while on administrative leave will
> not be granted. The investigation into these complaints is expected to conclude
> shortly. Until the matter is resolved, please continue to refrain from engaging in
> clinical activities.....

---

[2] Plaintiff's Exhibit 2, copy of the letter from Allison A. Jones dated May 19, 2021 to counsel for the Board of
Supervisors.

12.

Placing Dr. Woerner on administrative leave was an unlawful act. Mr. Jones does not have lawful authority to place a tenured faculty member on administrative leave.

**JONES DOES NOT HAVE APPOINTING
AUTHORITY OVER TENURED FACULTY**

13.

The Board of Supervisors is a corporate body created by Art. VIII, §7 of the Louisiana Constitution and vested with the powers to supervise, and manage the institutions and programs administered through its systems. The Board of Supervisors is the employer of personnel for the board and all managed universities. La. R.S. 17:3351A(10). The Board of Supervisors, not the state university it manages, has the right to sue and be sued. La. R.S. 17:3351A(1).

14.

The Board is authorized by La. R.S. 17:3351A(12) to adopt, amend, or repeal rules and regulations necessary or proper for the government of the universities it manages. *See also* La. Const. Art. VIII, § 7; La. R.S. 17:3218 and 17:3351B. In accordance with its constitutional and statutory authority, the Board of Supervisors of LSU adopted Bylaws to govern its operations and the operations of the universities it manages (the "Bylaws").[3] The Board of Supervisors has also enacted Rules and Regulations, which set forth its policies and procedures.[4] The Bylaw and the Rules and Regulations of the Board of Supervisors apply to all of the universities and colleges within the system.

15.

In addition to the Bylaws and the Rules and Regulations of the Board of Supervisors (which are issued by the Board) are Permanent Memoranda ("PM") issued by the President of the Board of Supervisors pursuant to authority delegated to him by the Board of Supervisors. The Bylaws, Rules and Regulations and Permanent Memoranda are all binding upon all institutions in the university system and have the effect of law.

---

[3] Plaintiff's Exhibit 3, excerpts of Bylaws of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College, attached hereto.
[4] Plaintiff's Exhibit 4, excerpts of Rules and Regulations of the Board of Supervisors of Louisiana State University Agricultural and Mechanical College, attached hereto.

16.

LSUHSC-S is one of the universities managed by the Board of Supervisors. The Board of Supervisors' Bylaws, Rules and Regulations and Permanent Memoranda are binding upon LSUHSC-S.

17.

In Article VII, §1 (K)(5) of the Bylaws, the Board of Supervisors has delegated the management of personnel to the President of the Board.

18.

Pursuant to Article II, §2 of the Rules and Regulations, the President has established a Personnel Action Approval Policy. Article II, §4, §5(A)(4) and §5(B) and (C)(1-2) provide that all personnel actions related to all faculty must be initiated pursuant to and in accordance with the President's Personnel Action Approval Policy.

19.

The President's Personnel Action Approval Policy is contained in Permanent Memorandum 69 ("PM 69"). In PM 69, the President delegated certain personnel authority to the Chancellors or Equivalents of each campus within the system. Section IV. of PM 69 states in relevant part:

> Delegation of Authority to Chancellors or Equivalents
> Authority to make all other personnel actions which are not reserved to the Board or the President are hereby delegated by the President to the Chancellors or equivalents. The President may also delegate authority to the Provost of the LSU A&M campus since the President also serves as the Chancellor of that campus. This delegation may be revoked or amended by the Board or the President at any time. Delegation includes the following items **which may not be further delegated.**
> * * *
> E. **Appointment and termination of tenured faculty.**   [Bold added for emphasis.]

20.

Through "Permanent Memorandum 69, Delegation of Authority to Execute Personnel Actions," ("PM 69")[5] the President has delegated eleven (11) specific personnel action powers to the Chancellors of the various campuses.

---

[5] Plaintiff's Exhibit 5, PM 69.

6

21.

The powers delegated by the President to the Chancellors of the various campuses is specified in PM 69, Section IV, as items A through K. PM 69 states specifically that the "items" delegated therein **"may not be further delegated except as noted."** [Bold added.]

22.

As shown above, one of the powers bestowed upon the President by the Board of Supervisors, and delegated by the President to the chancellors, is the power to appoint tenured faculty and to terminate the appointment of tenured faculty (Item E).

23.

There is no provision in PM 69 permitting a chancellor to delegate the power to appoint and terminate tenured faculty (Item E). It is one of the personnel action matters that cannot be further delegated. Thus, the President's authority to appoint and terminate tenured faculty can be exercised by the chancellors, but not by anyone subordinate to a chancellor.

24.

The power to appoint and to terminate tenured faculty is known as "appointing authority." The power to appoint tenured faculty and to terminate that appointment necessarily includes all matters in between that would affect the terms and conditions of the appointment, including temporarily relieving the tenured faculty member of normal job responsibilities without the faculty member's consent.

25.

Thomas Galligan is President of the LSU System and at all times relevant herein was Interim President or President.

26.

Dr. G.E. Ghali is the Chancellor of LSUHSC-S and held that office at all times relevant herein. Dr. Ghali voluntarily took an approved leave following Dr. Woerner's complaint against him, but transferred all clinical work to another hospital when Dr. Woerner was involuntarily relieved of duties.

7

27.

Dr. Ghali has delegated most of his Chancellor/administrative duties to Interim Chancellor David Lewis, while Dr. Ghali performs many of the clinical duties previously provided by Dr. Woerner.

28.

Dr. Ghali was the subject of Dr. Woerner's Title IX complaint and had a motive to retaliate against her. Though Dr. Ghali did not directly exercise appointing authority to prohibit Dr. Woerner from performing her duties as tenured faculty, that authority was exercised by unlawful delegation directly for Dr. Ghali's personal benefit.

29.

Dr. Ghali directly benefited from Dr. Woerner being removed from her duties as tenured faculty and placed on administrative leave. Once she was involuntarily relieved of her duties, he took over many of her duties and assigned others to his supporters.

30.

Though Dr. G.E. Ghali has resumed clinical practice at and still holds the title of Chancellor at LSUHSC-S, most of his duties of Chancellor were delegated to Interim Chancellor David Lewis, M.D.

31.

Because PM 69 prohibits a chancellor from delegating appointing authority of tenured faculty, Dr. Ghali could not delegate to Interim Chancellor Lewis the power of personnel action over tenured faculty. Interim Chancellor Lewis has never taken any action affecting Dr. Woerner's rights to perform the duties of her tenured faculty appointment.

32.

LSU President Thomas Galligan, to whom the LSU Board of Supervisors delegated their appointing authority, is the only person with lawful authority to alter the terms and conditions, even temporarily, of Dr. Woerner's tenured faculty appointment at LSUHSC-S.

33.

LSU President Thomas Galligan has never taken any action of any kind restricting Dr. Woerner's appointment as tenured faculty.

8

34.

Dr. Woerner did not consent to being placed on administrative leave. Dr. Woerner sent written objection immediately when she received the May 12, 2021, letter from assistant Vice-Chancellor Jones informing her that he was placing her on administrative leave and warning her to stay away from the campus and her other duty posts upon threat of enforcement action.

35.

Dr. Woerner is being prohibited from performing her duties as tenured faculty by Vice-Chancellor Charles F. Fox, III, Assistant Vice-Chancellor Edward F. Jones, and LSU's General Counsel, not one of whom is authorized by law to exercise any appointing authority over Dr. Woerner.

36.

The action of these Defendants against Dr. Woerner is an absolute nullity because it was undertaken without lawful authority.

37.

Further, placing Dr. Woerner on administrative leave was punitive and retaliatory.

38.

In her Title IX complaint and complaints to the EEOC/LCHR, Dr. Woerner reported that it was widely perceived that Dr. Ghali's conduct was discriminatory and retaliatory and that Mr. Jones had a conflict of interest that adversely affected his ability to conduct investigations of matters brought to him and this deterred complainants from coming forward with their concerns.

39.

Mr. Jones placed Dr. Woerner on administrative leave within 30 days of receiving notice that he was one of the subjects of her Title IX complaint letter.

40.

Placing Dr. Woerner on administrative leave was not only an unauthorized act with no lawful effect, it was also punitive and retaliatory.

41.

Article III of the Rules and Regulations of the Board of Supervisors specifies the types of leave that may be granted to excuse an employee from the performance of duties. There is no

provision for administrative leave as a type of leave that may be requested or imposed upon an academic employee or tenured faculty.

42.

Article III, §4 of the Rules and Regulations provides that time off without loss of pay, without loss of annual leave, and without loss of sick leave may be provided pursuant to policy memoranda of the President. However, the leave policies promulgated by the President address **_only_** leaves of absences that have been requested by the employee and approved by the appropriate authority. The President has never promulgated any personnel leave policy that defines "administrative leave." There is nothing in the Bylaws, Rules and Regulations or PMs that defines "administrative leave."

43.

The only reference to "administrative leave" within the Rules and Regulations and policies of the LSU system is in PM 73[6], in which "administrative leave" is listed as a "possible corrective action." PM 73 addresses Title IX investigations, such as those conducted by Mr. Jones' office. In a Title IX investigation, "administrative leave" is **"corrective action."** [Bold added]. Imposing this type of 'corrective action" upon Dr. Woerner would be in violation of state law prohibiting retaliation against one who has engaged in protected activity. Dr. Woerner engaged in activity protected by Louisiana law when she opposed sex discrimination and harassment in the workplace and reported the complaints of others to the appropriate investigative office within the LSU System.

44.

Mr. Jones retaliated against Dr. Woerner by placing her on administrative leave, without lawful authority. This was "corrective action" and an adverse employment action that is illegal.

---

[6] Plaintiff's Exhibit 6, excerpts of PM 73.

## III.

## REQUEST FOR DECLARATORY JUDGMENT

45.

Louisiana Code of Civil Procedure 1871 authorizes "Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed."

46.

Dr. Woerner seeks a declaration that her status as an Associate Professor of Oral and Maxillofacial Surgery at LSUHSC-S, with tenure, cannot be restricted, and that she cannot be involuntarily removed from the appointment, even temporarily, by anyone except the Chancellor (or, in the event the Chancellor has a conflict of interest or other impediment to the exercise of that authority, the President of the LSU System) and that the current involuntary leave imposed upon her by assistant vice-chancellor Jones' is unauthorized, unlawful and an absolute nullity.

## IV.

## REQUEST FOR PRELMINARY RESTRAINING ORDER
## AND PERMANENT INJUNCTION

47.

Pursuant to Louisiana Code of Civil Procedure article 3604, Dr. Woerner seeks a preliminary injunction pending resolution of her request for declaratory judgment ordering her reinstated to her duties as tenured faculty, immediately, and prohibiting assistant vice-chancellor Jones, or any other administrator from restricting her duties or impeding her in the performance of her duties until a ruling can entered on the request for declaratory relief.

48.

As shown by the facts in this verified petition, the restriction imposed upon Dr. Woerner's tenured faculty appointment by assistant Vice-Chancellor Mr. Jones is unlawful because (a) the action was not initiated or approved by the lawful appointing authority and (b) the action is based upon an unlawful and retaliatory cause.

11

49.

The conduct which Dr. Woerner seeks to restrain is unlawful conduct. Consequently, she is not required to show that she would suffer irreparable harm upon *prima facie* showing that the conduct sought to be restrained is unlawful conduct. See *Jurisch v. Jenkins*, 99-0076, p. 4 (La. 10/19/99), 749 So. 2d 597, 599:

> "A petitioner is entitled to injunctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e. when the conduct sought to be restrained constitutes a direct violation of a prohibitory law and / or a violation of a constitutional right."
> Therefore, the injunction should issue without bond.

## V.

## DAMAGES FOR RETALIATION

50.

Dr. Woerner further seeks all legal and equitable relief necessary to have her restored to her duties as tenured faculty, and the expungement of all records of the unlawful administrative leave.

51.

Dr. Woerner further shows that placing her on administrative leave was retaliatory action taken against her because she had engaged in the protected conduct of reporting an employment practice declared prohibited by the Louisiana Employment Discrimination Laws, La.R.S. 23:301, *et seq.* and the prohibition against sex discrimination in employment, La. R.S. 23:332. Though she sent her complaint to Title IX investigators, these investigators are also state employees and obligated by law to conduct an investigation of violations of state laws or forward the information to the appropriate state investigative office. Dr. Woerner also engaged in protected activity by providing information about discriminatory and unlawful workplace activities to the Louisiana Commission on Human Rights. Mr. Jones and Mr. Fox and LSU's General Counsel were aware that Dr. Woerner had filed a complaint with the LCHR because Dr. Woerner's counsel provided them a copy simultaneously with the submission to the LCHR.

52.

Dr. Woerner has suffered and will continue to suffer serious injury to her professional reputation if this Court does not intervene to lift the restriction and order her returned to work forthwith.

**VI.**

**NO FEDERAL CLAIMS ARE ASSERTED**

53.

No federal claims are asserted in this lawsuit. Any federal laws referenced are for purposes of stating facts, not as an element of any claim and not as a basis for relief. All claims for relief are asserted under state laws only.

**VII.**

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF REQUESTS that a hearing be set at which time the Defendants be ordered to appear and show cause why a preliminary injunction should not be issued restraining Edward Jones, in his official capacity and any other administrator of LSUHSC-S from preventing the Plaintiff from performing her duties as tenured faculty pending a ruling on Plaintiff's request for declaratory judgment.

PLAINTIFF FURTHER REQUESTS that upon the conclusion of due proceedings a judgment be entered declaring (a) that vice chancellor Jones does not have authority to prohibit Plaintiff from performing her duties by placing her on administrative leave; (b) that the administrative leave is an absolute nullity; (c) that the administrative leave is adverse employment action; (d) that the administrative leave is retaliatory; (e) restoring Plaintiff to her duties as tenured faculty with the expungement of all adverse actions from her personnel file; (f) awarding Plaintiff compensatory damages for injury to her professional reputation; and (g) awarding Plaintiff reimbursement of her costs and attorneys' fees.

13

PLAINTIFF FURTHER REQUESTS all legal and equitable relief to which she may be entitled, plus pre-judgement interest on all monetary awards.

DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445
e-mail: ajones@dhw-law.com
e-mail: pjones@dhw-law.com

By: _____

Allison A. Jones, Bar No. 16990
Pamela R. Jones, Bar No. 19640
ATTORNEYS FOR PLAINTIFF

14

JENNIFER WOERNER, D.M.D., M.D.

VERSUS

The BOARD OF SUPERVISORS OF
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL
COLLEGE and EDWARD F. JONES,
in his official capacity as
Assistant Vice-Chancellor for
Administration and Organizational Integrity
Louisiana State University Health
Science Center-Shreveport                                                      SECTION: ____

*[handwritten note: Original / Please call Jessica when ready. Want to Pick up. 213-4444]*

## ORDER

CONSIDERING the foregoing verified Petition for Declaratory Judgment and Preliminary and Permanent Injunctive Relief ("Petition")

IT IS HEREBY ORDERED that a Rule to Show Cause issue herein directed to the Defendants, the Board of Supervisors of Louisiana State University Agricultural and Mechanical College and Edward F. Jones, in his official capacity as Assistant Vice-Chancellor for Administration and Organizational Integrity Louisiana State University Health Science Center-Shreveport, ordering them to show cause, if any they can, on _____, 2021, at _____ o'clock ___ M. why a preliminary injunction should not be issued in favor of Plaintiff, Jennifer Woerner, D.M.D., M.D. and against for defendants, without bond or other security, (1) restraining Edward Jones, in his official capacity and any other administrator of LSUHSC-S from preventing the Plaintiff from performing her duties as tenured faculty pending a ruling on Plaintiff's request for declaratory judgment; and (2) that upon the conclusion of due proceedings a judgment be entered declaring (a) that vice chancellor Jones does not have authority to prohibit Plaintiff from performing her duties by placing her on administrative leave; (b) that the administrative leave is an absolute nullity; (c) that the administrative leave is adverse employment action; (d) that the administrative leave is retaliatory; (e) restoring Plaintiff to her duties as tenured faculty with the expungement of all adverse actions from her personnel file; (f) awarding Plaintiff compensatory damages for injury to her professional reputation; and (g) awarding Plaintiff reimbursement of her costs and attorneys' fees.

IT IS FURTHER ORDERED that Defendants, the Board of Supervisors of Louisiana State University Agricultural and Mechanical College and Edward F. Jones, in his official capacity as Assistant Vice-Chancellor for Administration and Organizational Integrity Louisiana State University Health Science Center-Shreveport, respond to the Request for Admissions filed with the Petition on or before two business days before the date set for the hearing on the Rule to Show Cause described above.

THUS DONE AND SIGNED in chamber, at Shreveport, Caddo Parish, Louisiana on this _____ day of _____, 2021.

_____
DISTRICT JUDGE

PLEASE SERVE:

THE BOARD OF SUPERVISORS OF THE
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL COLLEGE
can be served through
Ms. Mary L. Werner
Chair of LSU Board of Supervisors
3810 West Lakeshore Drive
Baton Rouge, LA  70808

MR. EDWARD F. JONES
Assistant Vice-Chancellor for Administration
and Organizational Integrity, Louisiana State
University Health Science Center-Shreveport
can be served at
1501 Kings Highway
Shreveport, LA  71103

JENNIFER WOERNER, D.M.D., M.D.          SUIT NO.

VERSUS                       FIRST JUDICIAL DISTRICT COURT

The BOARD OF SUPERVISORS OF       CADDO PARISH, LOUISIANA
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL
COLLEGE and EDWARD .F. JONES,
in his official capacity as
Assistant Vice-Chancellor for
Administration and Organizational Integrity
Louisiana State University Health       SECTION: _____
Science Center-Shreveport

## VERIFICATION

BEFORE ME, the undersigned Notary Public, personally came and appeared JENNIFER

WOERNER, D.M.D., MD., who did depose and state that she is the Plaintiff in the foregoing

Petition, that she has read the Petition, and that all of the allegations contained therein are true and

correct to the best of her knowledge, information and belief.

_____
JENNIFER WOERNER, D.M.D., MD.

SWORN TO AND SUBSCRIBED before me, Notary Public, this _16/th_ day of June, 2021.

_____
NOTARY PUBLIC

JENNIFER M. FORD
MY COMMISSION # HH 092038
EXPIRES: May 10, 2025
Bonded Thru Notary Public Underwriters



**Jennifer Woerner**
Mobile

 Bellar, Jerelyn                    ...

To: Kim, Dongsoo D.; Patel, Staven Y.; Meram,
Andrew T.; Palmieri, Celso F.; Neeley, Emily R ;
Alotaibi, Fawaz H.; Carlisle, Wesley D.; Jung,
Taylor J ; Ormeni, Daniel; Brockman, Ross D.;
Yang, Nathan C.; Edwards, Douglas; Mack,
Simon L.; Ericson, Kelton D.; Phan, Nguyen H.;
Wang, Justin; Ratliff, John; Hirt, Samantha N.;
Masri, Ahmad I.; Black, Brent T.; Cohen,
Elizabeth L.; Kennedy, Matthew C.; Naito,
Mitchell R ; Mihalich, Brandon S.; Powell,
Brandon L.; Tummala, Harish; Hsu, Eric; Stith,
Rebecca L.; Lugo, Ricardo; Das, Somdipto;
Bishop, Rachel; csikes@lsuhsc.edu; Dunki
Jacobs Notten, Diane S.; Plette, Dedrie P.; Ivy,
Stephanie D; Jubala, Katie L.; Chico, Amanda
A.; Thomas, Jennifer N.; Claiborne, Bridgett R.;
Lafitte, Lauren; Murphree, Joyce R ;
Drummond. Vanessa R.;
cmcdaniel2@wkhs.com;
jameslowder@lsuhsc.edu;
brettshirleyddsmd@gmail.com; Sehbi, Indrajit;
Ghali, Ghali E
Thu 5/13/2021 11:03 AM   View less

Dear Oral and Maxillofacial Surgery Faculty and Staff,

brettshirleyddsmd@gmail.com; Sehbi, Indrajit;
Ghali, Ghali E
Thu 5/13/2021 11:03 AM   View less

Dear Oral and Maxillofacial Surgery Faculty and Staff,

As of yesterday afternoon, Dr. Jennifer Woerner has
been placed on administrative leave. The conditions of
this leave involve her to not be on our campus and to
prohibit her from all clinical activities at any location.
She is not to interact with any member of the
Department of Oral and Maxillofacial Surgery for any
reason except for urgent patient care related issues.
Please report to me regarding any contact with Dr.
Woerner during this period.

Thank you.

D. David Kim, DMD, MD, FACS
Edward and Freda Green Endowed Professor and Vice-Chairman
Chief, Division of Head and Neck Oncology and Reconstructive
Surgery
Department of Oral and Maxillofacial/Head and Neck Surgery
LSU Health Science Center Shreveport
1501 Kings Highway
PO Box 33932
Shreveport, LA 71130-3932
Phone: 318-675-6101
Fax: 318-675-8218

      

|||                    ◯                    ‹



EXHIBIT
1

## DOWNER, JONES, MARINO & WILHITE, L.L.C.
### ATTORNEYS AT LAW

PHILIP E. DOWNER, III
ALLISON A. JONES
MICHAEL A. MARINO
MARCUS D. SANDIFER

American Tower
401 Market Street, Suite 1250
Shreveport, Louisiana 71101
Phone: (318) 213-4444
Fax: (318) 213-4445

OF COUNSEL
TIMOTHY W. WILHITE
PAMELA R. JONES

May 19, 2021

**EMAIL and CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Winston G. Decuir, Jr., Esq.                       wdecuirjr@lsu.edu
Vice President of Legal Affairs
and General Counsel
Louisiana State University
3810 West Lakeshore Drive, Suite 124
Baton Rouge, LA 70808

> Re: Title IX and Title VII Complaints of Dr. Jennifer Woerner, Dr. Christina
> Notarianni, Dr. Christi Rinaudo and Dr. Sharon Dunn

Dear Winston:

Ed Jones, the Assistant Vice-Chancellor for Administration & Organizational Integrity at LSUHSC-S, is currently conducting an investigation of alleged "complaints" against my client, Dr. Jennifer Woerner.  By letter dated May 12, 2021, Mr. Jones placed Ms. Woerner on administrative leave and informed her of the initiation of his investigation. The letter provides no details, does not state the nature of the alleged complaints and utterly fails to satisfy due process requirements.

It seems doubtful, if not impossible, that Mr. Jones could conduct or oversee an impartial and unbiased investigation into an alleged complaint against Dr. Woerner when Mr. Jones is himself one of the subjects of Dr. Woerner's ongoing complaints of how the LSU System has been mis-handling Title IX and Title VII complaints.  On April 5, 2021, Dr. Woerner sent a lengthy email to LSU Title IX lead investigators Jeffrey Scott and Stephanie Rhodes reporting that female residents at LSUHSC-S were being bullied, harassed, publicly humiliated and their complaints ignored.   Specifically, Dr. Woerner reported the complainants' concerns that as to the campus Title IX Coordinator, Ed Jones, "there is an overwhelming amount of conflict of interest present."



EXHIBIT
2

The mission statement of the Office of Administration and Organizational Integrity, as posted on the LSUSC-S website, is "to ensure the legal interests of the institution, faculty, staff, students and patients are monitored and protected." There is an inherent conflict of interest within this office when the integrity of a Title IX or Title VII investigation and the interests of justice require fact findings detrimental to the institution and / or its highest-level administrators. As Dr. Woerner has reported, it is the perception of those who have entrusted that office to investigate and remedy Title IX and Title VII complaints that this office's overriding mission is to protect only the institution and its administration and to deter complaints by punishing the complainant.

The fact that Ed Jones, one of the subjects of Dr. Woerner's Title IX complaint report, would issue and sign a letter placing Dr. Woerner on administrative leave so he could investigate an alleged complaint not only smacks of retaliation, but it further reinforces the perception that there is a total lack of integrity in what is seemingly named the Office of Administration and Organizational Integrity.

It is further deeply distressing that Dr. Woerner has been provided no details regarding the nature of the complaints against her nor has she been told the restrictions regarding her placement on administrative leave. Amazingly, however, the Interim Chair of her department has sent an email to all members of her department instructing each member that Dr. Woerner is prohibited from all clinical activities and is not to interact with any member of her department except for urgent patient care issues. This is a stunning lack of due process. The irony, of course, is that while Dr. Woerner is unaware of the nature of the complaints against her and has been placed on such a restrictive leave, Dr. Ghali and LSU are fully aware of the nature of the complaints against Dr. Ghali, and similar action against Dr. Ghali has not been taken.

Dr. Woerner requests that she be provided the due process to which she is entitled, including, but not limited to, her being provided with copies of the complaints against her and being allowed to have counsel present when, and if, she is interviewed as part of any investigation of alleged complaints against her. Dr. Woerner further demands that someone other than Ed Jones investigate the alleged pending complaints.

Dr. Woerner has been forced to file an amended charge with the Equal Employment Opportunity Commission to assert that she continues to be retaliated against for her opposition to discrimination. I trust you will share these issues with the President of LSU and each member of the Board of Supervisors.

Finally, LSU has now been aware of the Title IX and Title VII complaints of all my clients for nearly two months, and, to date, neither I nor my clients have been contacted by anyone from LSU to investigate the same. I would remind you that LSU has a duty not only to prevent the conduct complained of, but to promptly correct the same. I find it hard to believe that this legal duty can be satisfied if there is no investigation by LSU into the complaints lodged. Given the delay in conducting such an investigation, it appears that LSU has no interest in satisfying its legal duty. As such, I would request that, in addition to the EEOC investigation we have requested, LSU retain an outside entity to investigate the complaints alleged by my clients as soon as practicable.

I am happy to discuss these matters with you at your convenience.

Yours truly,

Allison A. Jones



## Board of Supervisors

LOUISIANA STATE UNIVERSITY BOARD OF SUPERVISORS

BYLAWS

*Effective August 14, 2020*

EXHIBIT

3

## CONTENTS

| | | |
|---|---|---:|
| ARTICLE I. | DEFINITIONS | 1 |
| ARTICLE II. | OFFICERS AND STAFF OF THE BOARD | 2 |
| ARTICLE III. | MEETINGS | 3 |
| ARTICLE IV. | ORDER OF BUSINESS | 5 |
| ARTICLE V. | COMMITTEES | 6 |
| ARTICLE VI. | COMMUNICATIONS TO THE BOARD | 9 |
| ARTICLE VII. | AUTHORITY OF THE BOARD | 10 |
| ARTICLE VIII. | AUTHORITY OF THE PRESIDENT | 14 |
| ARTICLE IX. | RIGHTS, DUTIES, AND RESPONSIBILITIES OF PRINCIPAL ADMINISTRATIVE OFFICERS OF THE UNIVERSITY | 16 |
| ARTICLE X. | RIGHTS, DUTIES, AND RESPONSIBILITIES OF THE ACADEMIC STAFF | 19 |
| ARTICLE XI. | AMENDMENT OR REPEAL OF BYLAWS | 20 |
| ARTICLE XII. | RULES AND REGULATIONS OF THE BOARD OF SUPERVISORS | 20 |
| ARTICLE XIII. | ADOPTION OF BYLAWS | 20 |
| ARTICLE XIV. | REPEALING CLAUSE | 20 |

i

# ARTICLE VII. AUTHORITY OF THE BOARD

**Section 1.      Matters Requiring Approval by the Board**

The following matters shall require approval by the Board, regardless of any delegations of authority otherwise provided for in these Bylaws or the Regulations of the Board. Except as set forth herein, no such matter shall be undertaken or approved by or for any campus or the University without prior review by the President and appropriate University Officers and express, formal approval by the Board.

### A. General Rule

Any matter having a significant or long-term impact, directly or indirectly, on the finances or the academic, educational, research, and service missions of the University or any of its campuses.

### B. Transfer of Title to Immovable Property

The transfer of title or ownership to any immovable property to or from the Board, whether by sale, assignment, donation, or other mechanism.

### C. Lease of Immovable Property

The lease of any immovable property, as lessee or lessor, where either:

1. the lease is potentially for a term of more than five (5) years or, for leases for agricultural purposes, more than eight (8) years (include any optional renewal terms provided for in the lease to calculate the potential term);

2. the lease is for more than 10,000 square feet of building space;

3. the lease is for more than five (5) acres of unimproved land for non-agricultural purposes;

4. the lease is for unimproved land for agricultural purposes and exceeds 50% of the land of a particular research station or similar facility;

5. the anticipated use of the building or land by the lessee would fundamentally transform the building or land and alter the purposes for which the University can use it (for example, the lease of farm land for the purpose of constructing a building on it, or the lease of a building for the purpose of having it demolished);

6. the lease is for the construction or renovation of any fraternity or sorority house; or

7. the lease raises significant questions of policy, such as privatization of a major University function, as determined by the President, in consultation with the Chair and Chair-Elect of the Board and the chair of the relevant Board committee.

8. For purposes of these Bylaws, a "lease" shall mean any agreement allowing for the use or occupancy of building space or land on an exclusive basis for a continuous term of six (6) months or more or for a term of 11 months or more in any 12 month period. "Lease" shall not include agreements allowing for occasional, sporadic, or incidental use or occupancy of building space or land.

### D. Granting of Mineral Rights or Other Significant Rights in Immovable Property

Any matter related to the assignment, sale, purchase, transfer, or donation of mineral rights in immovable property to or from the Board.

### E. Capital Improvements

Any contract or series of related contracts for the construction, renovation, or other capital improvement of buildings or other immovable property of the Board where either:

1. the construction cost is projected to be greater than $1 million;

2. the building or other structure being constructed will exceed 10,000 gross square feet of space; or

3. the use of the land as a result of the proposed construction is inconsistent with any applicable Master Plan approved by the Board.

10

**F.  Schematic Designs**

Exterior elevations of new buildings and of renovations or construction projects that significantly alter the appearance of the exterior of the building or other physical structures, where the construction cost is anticipated to exceed $1 million.

**G.  Bonds and Indebtedness**

Issuing any bonds or borrowing funds in any other manner, whether secured by the pledge of a revenue stream, property of the Board, or other means.

**H.  Major Contracts**

Any contract or series of related contracts that either:

1.  requires Board approval pursuant to the Higher Education Procurement Code adopted by the Board;

2.  is a Cooperative Endeavor Agreement for which approval by the Joint Legislative Committee on the Budget is required pursuant to applicable state law, including but not limited to La. R.S. 39:366.11, and any joint ventures, partnerships, and similar agreements; or

3.  raises significant financial, educational, or other policy issues, such as privatization of a major University function, as determined by the President, in consultation with the Chair and Chair-Elect of the Board and the chair of the relevant Board committee.

**I.  Academic Programs**

Any new academic degree program.

**J.  Non-Academic Affiliation Agreements**

Any affiliation agreement with a private non-profit foundation formed to support the programs, facilities, and research and educational opportunities offered by one or more campuses of the University, or the University as a whole.

**K.  Matters related to personnel:**

1.  The hiring process, appointment, annual evaluation, and all other personnel actions relating to the President

2.  Appointments, salary increases greater than 15%, salary decreases, and terminations for Chancellors and for University Officers.

3.  Appointments and all other personnel actions relating to Head Coaches and Athletic Directors.

4.  Appointments and all other personnel actions relating to Coaches other than Head Coaches with a salary of $250,000 or above.

5.  Upon approval by the President of a Personnel Action Approval Policy, and in conformance with such policy, the President shall have authority to approve all other actions and to delegate approval to the Chancellors or their designees.

6.  The Board authorizes and approves the payment of any salary supplemental benefits to its employees by the support organizations with whom the Board has affiliation agreements.

7.  Except as specifically provided in the Personnel Action Approval Policy established by the President, Board approval is not required for personnel actions which are governed by the laws and rules promulgated by the Department of State Civil Service affecting the Classified Service.

**L.  Other Significant Matters**

Such other matters that are not expressly delegated herein or hereafter by the Board to the President or a Chancellor and which reasonably should be considered to require Board approval as generally defined above, or which the Board hereafter determines to require Board approval.

11

# Regulations

Board of Supervisors
Louisiana State University and Agricultural & Mechanical College
Effective: October 1, 2018



EXHIBIT

4

**CONTENTS**

ARTICLE I. ACADEMIC AND ADMINISTRATIVE ORGANIZATION .................................................. 1
ARTICLE II. APPOINTMENTS, PROMOTIONS, AND TENURE ........................................................ 6
ARTICLE III. LEAVES .................................................................................................................... 15
ARTICLE IV. INSURANCE AND RETIREMENT ........................................................................... 17
ARTICLE V. FINANCIAL AND BUSINESS PROCEDURES ......................................................... 19
ARTICLE VI. GIFTS AND GRANTS ............................................................................................... 24
ARTICLE VII. INTELLECTUAL PROPERTY .................................................................................. 25
ARTICLE VIII. AFFILIATED ORGANIZATIONS ............................................................................. 36
ARTICLE IX. REPEAL AND AMENDMENT TO REGULATIONS .................................................. 36

## ARTICLE II. APPOINTMENTS, PROMOTIONS, AND TENURE

### Section 1.  Classification of Employees, General

Employees of the University are grouped as follows:

**A.  Nonstudent Employees**

    1.  **Academic Employees**

        a.  **Faculty.**  Full-time members of the academic staff on the various campuses with the rank of Instructor or above and equivalent ranks.

        b.  **Other Academic.**  Part-time members of the academic staff; members of the academic staff below the rank of Instructor or equivalent; and other personnel with academic responsibilities not holding faculty rank.

    2.  **Nonacademic Employees**

        a.  **Unclassified**

            i.  Administrative officers and professional staff, and positions specifically exempt from the classified service under Article X of the Constitution of the State of Louisiana.

            ii.  Other positions exempt from the classified service by special action of the State of Louisiana, Department of Civil Service.

        b.  **Classified.**  All employees in positions covered by the provisions of the Civil Service System of the State of Louisiana.

**B.  Student Employees**

    1.  **Graduate Assistants.**  Full-time graduate students who are employed part-time for services supportive of the graduate education experience.

    2.  **Students.**  Those full-time undergraduate, graduate, and professional students who are employed on a part-time basis on the various campuses of the University and not classified as graduate assistants.

    3.  **Interns, Residents.**  These and other such students employed in programs designed to fulfill professional and specialty requirements.

### Section 2.  Personnel Actions

The President shall establish a Personnel Action Approval Policy which shall establish the requirements for approval of all personnel actions except those reserved for Board approval under the LSU Board of Supervisors Bylaws.

### Section 3.  Terms of Employment, Nonacademic Staff

**A.  Classified Personnel**

Classified personnel hold their positions according to the terms of their appointment under the provisions of the Civil Service System of Louisiana and the classified procedures of the University.

6

**B. Unclassified Employees**

Unclassified employees hold their positions at the pleasure of the Board. Services of unclassified employees may be terminated by giving such employees reasonable notice with the approval of the Chancellor of the campus or, for LSU, the President or his designee. "Reasonable notice" shall be interpreted to mean written notice given at the time the action is instituted by the employee's immediate supervisor and effective after a period of time equivalent in days to the usual payroll period of the employee.

**Section 4.  Personnel Actions, Academic Staff**

In all personnel actions related to academic staff the principle of academic freedom shall be recognized.  See the LSU Board of Supervisors Bylaws.

All personnel actions relating to faculty and other members of the academic staff shall be initiated in accordance with the Personnel Action Approval Policy.  Actions shall be taken after appropriate consultation with the faculty.

**Section 5. Personnel Actions Requiring Board Approval**

Except as otherwise provided in the Bylaws, and notwithstanding any other provisions of these *Regulations*, all personnel actions made by any campus or institution of the University shall be made in accordance with the following provisions and the Personnel Action Approval Policy established by the President.

**A.  Personnel Actions Requiring Board Approval**

The following personnel actions shall require approval by the Board of Supervisors:

1.  Appointments and all other personnel actions relating to the President, Head Coaches and Athletic Directors.

2.  Appointments and all other personnel actions relating to Coaches other than Head Coaches with a salary of $250,000 or above.

3.  Appointments, salary increases greater than 15%, salary decreases, and terminations for Chancellors and for University Officers.

4.  Upon approval by the President of a Personnel Action Approval Policy, and in conformance with such policy, the President shall have authority to approve all other actions and to delegate approval to the chancellors or their designees.

5.  Except as specifically provided in the Personnel Action Approval Policy established by the President, Board approval is not required for personnel actions which are governed by the laws and rules promulgated by the Department of State Civil Service affecting the Classified Service.

**B.  Personnel Actions Not Requiring Board Approval**

1.  Approval of other personnel actions shall follow the Personnel Action Approval Policy established by the President.

2.  Authority to take all other personnel actions is hereby delegated by the Board to the President, who may further delegate such authority, under the Personnel Action Approval Policy, as he deems to be in the best interests of the University.

**C.  Reporting**

Quarterly reports will be developed and provided to the Board providing necessary information required to fulfill the Board's fiduciary and oversight responsibilities.

7

## ARTICLE III. LEAVES

### Section 1.  Sabbatical Leave

Full-time academic employees [Sec. 2-1a(1)] at the rank of Instructor (or equivalent) or above, who have completed six years of service on the campus without having received leave with pay, may petition for sabbatical leave for study and research, the object of which is to enable them to increase their professional efficiency and usefulness to the University.  Adequate justification setting forth the plan for each sabbatical leave shall be stated, and report of the accomplishments under each leave granted shall be made promptly upon return from sabbatical leave.  Sabbatical leave shall normally be approved for the purpose of seeking a higher degree only under unusual circumstances.  Persons employed on a 12-month basis may be granted 12 months' leave with one-half pay or six months' leave with full pay.  Persons employed on nine-month basis may be granted nine months' leave with one-half pay or four and one-half months' leave with full pay.  Approval of sabbatical leaves shall be in accordance with the Personnel Action Approval Policy.  A member of the academic staff who is granted sabbatical leave shall be required to return to his University duties for at least a year before accepting employment elsewhere.  A condition for granting of a sabbatical leave is the potential benefit the University will receive as a result of the sabbatical.

Under unusual circumstances, persons may accept employment during sabbatical leave if such employment is approved in advance by the President upon recommendation of the Chancellor or, for LSU, the President's designee as supportive of the purposes of the leave.

### Section 2.  Leave to Obtain Advanced Degree

Members of the instructional, research, and extension staff on full-time regular academic appointment, who have completed two consecutive years of service at the rank of Instructor (or equivalent) or above, may petition for a leave of absence with part pay for not more than one year of study which will culminate in the receipt of an advanced degree.  Such petition shall set forth the course of study to be pursued, the institution to be attended, an account of the petitioner's prospect for securing an advanced degree, and such other information as may be required.  Approval shall be granted only after it has been determined that the interests of the University will be best served by granting such leave and that the petitioner will return to his University duties for at least two years before accepting employment elsewhere.  Approval of sabbatical leaves shall be in accordance with the Personnel Action Approval Policy.  The amount of pay to be allowed under such a grant shall be determined in each individual case, but in no event shall it exceed one-half of the regular salary which would accrue to the petitioner during the period of leave.[4]  If the petitioner, upon taking educational leave, does not return to the University for the required two years, the petitioner shall pay back to the University the amount paid to the petitioner for the leave.  The period of service completed prior to granting of leave under this section shall not be counted in considering eligibility for sabbatical leave.

### Section 3.  Annual Leave and Sick Leave

#### A.  Annual Leave

Annual leave is leave with pay granted an employee for the purpose of rehabilitation, restoration, and maintenance of work efficiency, or the transaction of personal affairs.

#### B.  Sick Leave

Sick leave is leave with pay granted an employee who is suffering with a disability which prevents him from performing his usual duties and responsibilities or who requires medical, dental, or optical consultation or treatment.

---

[4]For the academic-year employee, the term "regular" refers to the salary of the academic year, without presumption of summer term appointment.

**C.  Academic and Unclassified Employees**

Regular full-time and part-time members of the academic staff on fiscal appointment and regular unclassified employees are entitled to annual leave. Regular full-time and part-time members of the academic staff on fiscal- or academic-year appointment and regular unclassified employees are entitled to sick leave. The amount of accumulation and other provisions concerning annual leave and sick leave shall be in accordance with regulations or policies approved by the Board, appropriate State statutes, or policies applicable to the University, with such provisions to be issued by memorandum from the President.

**D.  Classified Personnel**

Annual leave and sick leave of classified personnel shall be governed by the Civil Service Regulations.

**E.  LSU Laboratory School Faculty**

Members of the LSU Laboratory School Faculty on academic year appointments teaching grades K-12 may, during each fiscal year designate no more than two days of earned sick leave to be used as personal or annual leave and may be used in accordance with the definition of such leave as listed above.  Personal or annual leave for LSU Laboratory School Faculty may not be accumulated from one fiscal year to the next.

**Section 4.  Civil, Emergency, and Special Leave**

An employee shall be given time off without loss of pay, annual leave, or sick leave under such conditions as outlined:

**A.**    **Academic and Unclassified Employees** - as provided in policy memorandum from the President.

**B.**    **Civil Service Employees** - as provided in Civil Service Regulations.

**Section 5.  Military Leave**

An employee of this University who is ordered to duty with troops or at field exercises or for instruction with any branch of the Armed Forces (including the National Guard) for periods not to exceed fifteen (15) working days in any one calendar year is entitled to leave of absence from duties without loss of pay, time, annual leave, or efficiency rating, and when relieved from duty shall be restored to the position held when ordered to duty.  Any portion of a military leave in excess of fifteen (15) working days during a calendar year shall be leave without pay, unless chargeable against accrued vacation with pay.

**Section 6.  Leave of Absence Without Pay**

**A.  Academic and Unclassified Administrative Officers and Professional Staff**

Leaves of absence without pay may be granted for good cause.  Approval of leaves of absence shall be in accordance with the Personnel Action Approval Policy. During leaves of absence without pay no allowance for sick leave or vacation shall accumulate.  For academic employees, the period of absence without pay may, upon appropriate administrative recommendation, be credited toward tenure.

**B.  Classified and Unclassified Employees Exempt from the Classified Service by Special Action of the State of Louisiana, Department of Civil Service**

Leaves of absence without pay may be granted in accordance with Civil Service regulations.



## PERMANENT MEMORANDUM 69
## DELEGATION OF AUTHORITY TO EXECUTE PERSONNEL ACTIONS

Monitoring Unit:
Initially Issued:
Last Revised: December 9, 2016

### I.  PURPOSE

To provide for a uniform personnel policy for LSU and to provide for specific and express delegation of authority to execute personnel actions. This delegation of authority may be amended or revoked at any time.

### II.  BOARD APPROVAL

The personnel actions listed below require approval by the Board. Authority to take such actions is not delegated to either the President or the Chancellors or equivalents.

- A.  Appointments, salary increases greater than 15%, salary decreases, and terminations of University Administration executive level positions that report directly to the President who have LSU wide responsibility.

- B.  Appointments, salary increases greater than 15%, salary decreases, and terminations for Chancellors and equivalent positions.

- C.  Head coach/athletic director contracts/amendments.

- D.  Appointments and all other personnel actions relating to coaches other than Head Coaches with a salary of $250,000 or above.

### III. PRESIDENT APPROVAL

The following actions require approval by the President and are not delegated to the Chancellors or equivalents, except that the President may delegate authority to the Provost of the LSU A&M campus since the President also serves as the Chancellor of that campus. Additionally, items A-D may be delegated to the Vice President for Finance and Administration.

- A.  Pre-approval of base salary ranges with a midpoint equal to $250,000 or above.

- B.  Appointments not based on a pre-approved salary range and a salary of $250,000 or above.

- C.  Salary increases associated with additional duties, merit increases, counter offers, and retention raises in excess of 15% annually for positions with a base salary of $100,000 or above.

- D.  Salary increases in excess of 15% to campus executive level employees unless increase is due to a promotion and would be treated like a new appointment.

1



EXHIBIT
5

E.  Involuntary termination or reduction in base pay of an employee occupying a campus executive level-position that reports to the chancellor or equivalent with campus wide responsibilities.

F.  Reemployment of a retiree to a position within the entities of LSU that is not significantly different from the position from which the individual retired, unless two or more years have lapsed.

G.  Reemployment of an LSU retiree by the campus from which he/she retired if the appointment is for more than two years and more than 50% effort.

H.  Leave without pay in excess of two years.

I.  Creation of a new position at the level of vice chancellor or above.

J.  Additional compensation exceeding the limits established by Presidential policy.

K.  Any other item for which President's approval is specifically required under the Board Regulations.

L.  Leave without pay for one year or more or special leave with any pay or benefits for thirty days or more within any twelve month period.

## IV. DELEGATION OF AUTHORITY TO CHANCELLORS OR EQUIVALENTS

Authority to make all other personnel actions which are not reserved to the Board or the President are hereby delegated by the President to the Chancellors or equivalents. The President may also delegate authority to the Provost of the LSU A&M campus since the President also serves as the Chancellor of that campus. This delegation may be revoked or amended by the Board or the President at any time. Delegation includes the following items which may not be further delegated except as noted.

A.  Delay of the tenure-clock with justification.

B.  Change of an occupied position from classified to unclassified except that this may be delegated to the provost or equivalent.

C.  Appointments to campus executive level positions.

D.  Increases in base pay not fully approved within the campus within 90 days of the effective date.

E.  Appointment and termination of tenured faculty.

F.  Granting of tenure to an existing faculty member, and/or promotion in faculty rank.

G.  Emeritus status.

H.  Reemployment of an LSU retiree by the campus from which he/she retired if the appointment is to a similar position, as determined by the HRM Office based on review of the job descriptions.

I.  Educational or sabbatical leave (this provision supersedes any the approval requirements of

2

Presidential policy)

J.  Salary supplements from Foundation funds.

K.  Appointment to any designated chair or professorship

In addition to the above, it is expected that Chancellors or equivalents will delegate routine transactions to the Provost, vice chancellors, deans and department heads provided there is adequate review by the HRM Office or other appropriately trained office to ensure compliance with applicable regulations.

## V.  SUBMISSION REQUIREMENTS

Recommendations for personnel actions which must be approved by the Board or the President shall be submitted in writing, by the deadlines established by the Board, signed by the Chancellor or equivalent. Each recommendation shall include sufficient information to fully describe and explain the action being proposed.

## VI. MISCELLANEOUS

A.  Except as otherwise specifically provided, this Memorandum shall not apply to personnel actions relating to employees governed by the laws and rules promulgated by the Department of State Civil Service affecting the Classified Service.

B.  All references to an annual period refer to the LSU fiscal year unless the context indicates otherwise.

C.  Nothing herein shall be construed to alter, amend, or in any way affect presidential policy or the policies and procedures set forth therein, which are required by La. R.S. 42:1123(9)(b). Nothing herein creates any rights, procedural or substantive, in employees, prospective employees or other persons.

3



## PERMANENT MEMORANDUM 73

## Title IX Policy Prohibiting Sexual Misconduct

POLICY DIGEST
Monitoring Unit: Office of Civil Rights & Title IX
Initially issued: December 15, 2015
Last Revised: April 26, 2021

## I. INTRODUCTION

This Permanent Memorandum outlines the procedures for addressing and resolving allegations of Sexual Misconduct (e.g. sexual assault, stalking, dating violence, domestic violence, sexual exploitation, sexual harassment, retaliation, etc.). LSU's Title IX Coordinator is responsible for administering this policy at all University locations. **Any employee who is required to report instances of power-based trauma and fails to promptly make the report without good cause or, with the intent to harm or deceive, knowingly makes a report that is false, shall be terminated.**

## II. NONDISCRIMINATION NOTICE

LSU is committed to creating an environment of inclusion and respect among students, faculty, staff and the community at large. LSU does not discriminate on the basis of race, creed, color, marital status, sexual orientation, gender identity, gender expression, religion, sex, national or ethnic origin, age, disability, genetic information, veteran's status or any other status or organization protected by state or federal law, in its programs and activities. This includes all aspects of LSU's education programs and activities, including admission and employment.

Inquiries regarding the non-discrimination policy should be directed to the individual or individuals designated in each campus' applicable policy. Inquiries about the application of Title IX and this policy may be directed to the LSU Title IX Campus Coordinator, or to the U.S. Department of Education Office for Civil Rights Assistant Secretary. https://www2.ed.gov/about/offices/list/ocr/contactus2.html

## III. PURPOSE AND GENERAL POLICY

Sexual Misconduct violates an individual's fundamental rights and personal dignity and will not be tolerated. LSU prohibits and is committed to an environment free of discrimination on the basis of sex and Sexual Misconduct. This policy affirms these principles and

1



provides recourse for individuals whose rights have been violated.

LSU will take prompt action to prevent prohibited conduct, discipline those who violate this policy, prevent recurrence of prohibited behavior, and effect equitable remedies.

LSU will affirmatively promote prevention, awareness and training programs to encourage individuals to report concerns or complaints. Everyone has a responsibility to prevent and report acts of prohibited conduct. The entire LSU community is responsible for fostering a welcome environment conducive to learning.

## IV. POLICY COVERAGE/SCOPE

This policy applies to all members of the University community, including faculty, staff, students, volunteers, organizations and any other affiliate that participates in activities associated with LSU.

This policy covers conduct that occurs:

- In the course of LSU's operations;
- On a LSU campus or any other University owned, leased, controlled or operated location;
- Within the bounds of the United States;
- At any LSU sponsored event or organizational activity in the United States whether on or off campus; and/or
- Where LSU exercised substantial control over the Respondent in the context of where or how the alleged incident occurred.

Students are responsible for their conduct from notice of admission through the awarding of a degree or departure from the University. Employees are covered by this policy when representing LSU (or deemed to be a representative of LSU) whether before, during or after work. This policy also applies to any person who is both a student and an employee at LSU.

Anyone subjected to Sexual Misconduct is encouraged to file a complaint with the Title IX office. Any individual who has experienced Sexual Misconduct is also urged to utilize supportive measures available through the University whether or not the person who caused the harm is a University community member. Supportive measures are available whether or not a Formal Complaint is filed.

This policy is not intended to infringe on or restrict rights guaranteed by the United States Constitution including free speech under the First Amendment, due processes clauses of the Fifth and Fourteenth Amendments and the Fourth Amendment.

2

Upon reaching a decision, the Hearing Panel will invite the parties and Advisors to return to hear of the Hearing Panel's finding regarding responsibility for a violation of this policy.

If the Respondent is found responsible, the Hearing Panel shall move to address sanctions.

## DETERMINATION AND SANCTIONS

If the Respondent is found responsible, the Hearing Panel may request input from the parties to evaluate possible sanctions. Prior conduct history of the Respondent will be considered when determining an appropriate sanction. If additional information is requested, the Hearing Panel shall deliberate in closed session with only panelists present.

The Hearing Panel will notify the parties and Advisors of any sanction imposed.  The Hearing Panel will prepare and provide to the Title IX Campus Coordinator, within five business days of the Hearing, a written determination which must include:

- Identification of the allegations constituting Sexual Misconduct;
- A description of the procedural steps taken from receipt of the Formal Complaint through determination, including any notifications to the parties, interviews with parties and witnesses, evidence gathered and hearings held;
- Findings of fact supporting the determination;
- Conclusions regarding the application of the policy to the facts;
- A statement explaining the sanction for each policy violation found "responsible";
- Whether additional remedies designed to restore or preserve equal access will be provided by LSU to the Complainant.

The Title IX Campus Coordinator is responsible for effective implementation of any remedies and sharing of outcomes. The written determination prepared by the Hearing Panel chair shall be shared electronically by the Title IX Campus Coordinator with the parties and Advisors within three business days of receipt from the Hearing Panel.

The determination regarding responsibility and sanctions becomes final either:

- If appealed, the date written notice is provided to the parties of the appeal result, or
- If not appealed, the date on which an appeal would no longer be considered timely.

## POSSIBLE CORRECTIVE ACTIONS

Students found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, disciplinary probation, deferred suspension, suspension, expulsion psychological assessment, counseling, social restrictions, limited presence on campus, revocation of admission or degree.  Additional sanctions may also be imposed when appropriate.

12

An employee found responsible for violating this policy may expect the range of sanctions to include, but not be limited to, suspension, administrative leave, demotion, psychological assessment, counseling, restricted presence on campus or termination of employment.

Both the Complainant and Respondent will be informed of the outcome of any corrective action or disciplinary process.

13

JENNIFER WOERNER, D.M.D., M.D.       SUIT NO.

VERSUS                      FIRST JUDICIAL DISTRICT COURT

The BOARD OF SUPERVISORS OF      CADDO PARISH, LOUISIANA
LOUISIANA STATE UNIVERSITY
AGRICULTURAL AND MECHANICAL
COLLEGE and EDWARD F. JONES,
in his official capacity as
Assistant Vice-Chancellor for
Administration and Organizational Integrity
Louisiana State University Health
Science Center-Shreveport          SECTION: ____

## REQUESTS FOR ADMISSIONS OF FACTS

To:   Board of Supervisors of Louisiana State University and Agricultural and Medical
      College
      Ms. Mary L. Werner
      Chair of LSU Board of Supervisors
      3810 West Lakeshore Drive
      Baton Rouge, LA  70808

To:   Mr. Edward F. Jones
      Assistant Vice-Chancellor for Administration and Organizational Integrity,
      Louisiana State University Health Science Center-Shreveport
      1501 Kings Highway
      Shreveport, LA  71103

      JENNIFER WOERNER, D.M.D, MD requests that you admit the following facts within

the time order by the Court in this matter, or within the time set in the Louisiana Code of Civil

Procedure, whichever occurs earlier:

## REQUEST FOR ADMISSION NO. 1:

      Plaintiff Woerner is a Doctor of Dental Medicine with a Doctorate in Medicine, and

employee of the Board of Supervisors System and a tenured member of the faculty at LSUHSCS.

## REQUEST FOR ADMISSION NO. 2:

      Dr. Woerner was tenured July 1, 2019. She currently serves in the position of Associate

Professor, Associate Dean of Academic Affairs, Fellowship Director of Craniofacial and Cleft

Surgery, and holds the Tilakram and Bhagwanti Devi Distinguished Professorship in Cleft Lip &

Palate Surgery and Training.

**REQUEST FOR ADMISSION NO. 3:**

In 2021, Dr. Woerner assisted female students, residents, and fellows in asserting complaints of sex discrimination and harassment that were occurring at LSUHSC-S in violation of Title IX of the Education Amendments of 1972, a law protecting students from discrimination based on sex in education programs or activities. On April 5, 2021, Dr. Woerner sent a lengthy email to LSU Title IX lead investigators Jeffrey Scott and Stephanie Rhodes reporting that female students, residents, and fellows at LSUHSC-S were being bullied, harassed, publicly humiliated and their gender complaints ignored. Specifically, Dr. Woerner reported the complainants' concerns that Chancellor G.E. Ghali ("Ghali") was aware of Title IX complaints and not taking appropriate action and that as to campus Title IX Coordinator, Ed Jones, "there is an overwhelming amount of conflict-of-interest present." Dr. Woerner also complained of the gender discrimination she was likewise experiencing and of the retaliation she was experiencing due to her participation in the protected activity of opposing the discrimination she was reporting.

**REQUEST FOR ADMISSION NO. 4:**

On April 13, 2021, Dr. Woerner filed a complaint of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights ("LCHR"). The filing of these complaints was made public through various news agencies, including, but not limited to, the Advocate, a statewide newspaper. Following the complaint of Dr. Woerner against him and Mr. Jones, Chancellor Ghali consented to being temporarily removed from his duties as Chancellor only and voluntarily accepted leave with pay. Mr. Jones continued his duties as Assistant Vice-Chancellor for Administration and Organizational Integrity.

**REQUEST FOR ADMISSION NO. 5:**

On May 12, 2021, Dr. Woerner attended a meeting conducted by Mr. Jones and attended by Dr. Charles Fox, III, Vice Chancellor for Clinical Affairs. During this meeting Mr. Jones informed Dr. Woerner that he was initiating an investigation into alleged complaints by residents against her and placing her on administrative leave pending the investigation. Jones handed Dr. Woerner a letter stating that she was on administrative leave and was not to return to the campus. Jones' letter did not state the nature of the alleged complaints nor why it would be necessary to

force Dr. Woerner to cease teaching and/or patient care pending investigation. Dr. Charles Fox stated that this was the protocol decided upon between him and Mr. Jones. Dr. Woerner was involuntarily removed from her duties as tenured faculty immediately following that meeting on May 12, 2021.

**REQUEST FOR ADMISSION NO. 6:**

Thereafter, all faculty members, including Dr. Ghali, and staff were sent an email that read as follows:

> As of yesterday afternoon, Dr. Jennifer Woerner has been placed on administrative leave. The conditions involve her to not be on our campus and to prohibit her from all clinical activities at any location. She is not to interact with any member of the Department of Oral and Maxillofacial Surgery for any reason except for urgent patient care related issues. Please report to me regarding any contact with Dr. Woerner during this period. Thank you. D. David Kim, Chair.[1]

**REQUEST FOR ADMISSION NO. 7:**

Attached as Exhibit 1 to Plaintiff's Petition is a true and correct screen shot of the email sent by Dr. David Kim to all faculty members of LSUHSC regarding Dr. Woerner.

**REQUEST FOR ADMISSION NO. 8:**

On May 13, 2021, with all the residents conducted by Dr. David Kim (Chair), Leisa Oglesby (Designated Institutional Officer), and Mr. Jones where the residents were verbally instructed that they were not allowed to communicate with Dr. Woerner for any reason, and they should report her if she reached out to them. Dr. Ghali then returned to work as a faculty member performing clinical patient care and began to perform Dr. Woerner's duties and/or participated in the reassignment of her cases to faculty members who supported his return as Chancellor. Dr. Woerner's duties were re-assigned and absorbed, in part, by Dr Ghali, the subject of her Title IX complaint, and Dr. Patel, a Dr. Ghali supporter.

**REQUEST FOR ADMISSION NO. 9:**

Dr. Woerner, through counsel, objected to being placed on administrative leave and asked to be returned to her duties. To date she has not been returned to her duties.

---

[1] Plaintiff's Exhibit 1, screen shot of email to Department.

**REQUEST FOR ADMISSION NO. 10:**

Attached as Exhibit 2 to Plaintiff's Petition is a true and correct copy of letter from Allison

A. Jones to counsel for the Board of Supervisors.

**REQUEST FOR ADMISSION NO. 11:**

Following her objection through counsel, Dr. Woerner, in good faith, directly emailed Dr.

Charles Fox and Dr. David Lewis, requesting to return to clinical duties. Her email request read as

follows:

> I wanted to reach out to you because I have not heard anything, nor has my counsel,
> related to my administrative leave. It has been over 2 weeks, and despite contacting
> general counsel at BR, there has been no response related to receiving these
> complaints in writing, my due process, the investigation, or any possible timeline
> for return. My patients are anxiously awaiting, and my department has begun
> "redistributing" my direct referrals and current patients to two of the individuals I
> actually have filed complaints against. I'm not sure either of you are aware, but I
> just underwent a full audit by the LSBME and internally at every hospital I work at
> in late 2019, over 3-5 years of my records. This review found no CMS violations,
> no professional complaints of any kind, and no other compliance related concerns
> on my part. All of my outcomes metrics were found to be excellent as well. I
> understand the sensitivity of this situation, but I do not require the assistance of
> residents to run my clinical service and would like to request that I can return to
> clinical practice and continue training my fellow, Dr. Rachel Bishop as this is
> negatively impacting her training. I hope you look favorably upon my request.

**REQUEST FOR ADMISSION NO. 12:**

This email request was then followed by an email response by Ed Jones, on June 3, 2021,

denying her request to return to work. Ed Jones' email response read as follows:

> You were placed on administrative leave with pay effective May 12, 2021 pending
> resolution of complaints filed against you by GME residents, and directed to refrain
> from any clinical duties. You request, via May 30, 2021 email to Dr. Lewis and Dr.
> Fox, to return to clinical practice while on administrative leave was forwarded to
> me for response. After review and consultation with the LSU General Counsel's
> office, your request to return to clinical practice while on administrative leave will
> not be granted. The investigation into these complaints is expected to conclude
> shortly. Until the matter is resolved, please continue to refrain from engaging in
> clinical activities.....

**REQUEST FOR ADMISSION NO. 13:**

Mr. Jones does not have lawful authority to place a tenured faculty member on

administrative leave.

**REQUEST FOR ADMISSION NO. 14:**

The Board of Supervisors is a corporate body created by Art. VIII, §7 of the Louisiana

Constitution and vested with the powers to supervise, and manage the institutions and programs

administered through its systems. The Board of Supervisors is the employer of personnel for the board and all managed universities. La. R.S. 17:3351A(10). The Board of Supervisors, not the state university it manages, has the right to sue and be sued. La. R.S. 17:3351A(1).

**REQUEST FOR ADMISSION NO. 15:**

The Board is authorized by La. R.S. 17:3351A(12) to adopt, amend, or repeal rules and regulations necessary or proper for the government of the universities it manages. *See also* La. Const. Art. VIII, § 7; La. R.S. 17:3218 and 17:3351B. In accordance with its constitutional and statutory authority, the Board of Supervisors of LSU adopted Bylaws to govern its operations and the operations of the universities it manages (the "Bylaws"). The Board of Supervisors has also enacted Rules and Regulations, which set forth its policies and procedures. The Bylaws and the Rules and Regulations of the Board of Supervisors apply to all of the universities and colleges within the system.

**REQUEST FOR ADMISSION NO. 16:**

Attached as Exhibit 3 to Plaintiff's Petition is a true and correct copy of excerpts of the Bylaws adopted by the Board of Supervisors of LSU.

**REQUEST FOR ADMISSION NO. 17:**

In addition to the Bylaws and the Rules and Regulations of the Board of Supervisors (which are issued by the Board) are Permanent Memoranda ("PM") issued by the President of the Board of Supervisors pursuant to authority delegated to him by the Board of Supervisors. The Bylaws, Rules and Regulations and Permanent Memoranda are all binding upon all institutions in the university system and have the effect of law.

**REQUEST FOR ADMISSION NO. 18:**

Attached as Plaintiff's Exhibit 4 to Plaintiff's Petition is a true and correct copy of excerpts of the Rules and Regulations of the Board of Supervisors.

**REQUEST FOR ADMISSION NO. 19:**

LSUHSC-S is one of the universities managed by the Board of Supervisors. The Board of Supervisors' Bylaws, Rules and Regulations and Permanent Memoranda are binding upon LSUHSC-S. In Article VII, §1 (K)(5) of the Bylaws, the Board of Supervisors has delegated the management of personnel to the President of the Board.

**REQUEST FOR ADMISSION NO. 20:**

Pursuant to Article II, §2 of the Rules and Regulations, the President has established a Personnel Action Approval Policy. Article II, §4, §5(A)(4) and §5(B) and (C)(1-2) provide that all personnel actions related to all faculty must be initiated pursuant to and in accordance with the President's Personnel Action Approval Policy.

**REQUEST FOR ADMISSION NO. 21:**

The President's Personnel Action Approval Policy is contained in Permanent Memorandum 69 ("PM 69"). In PM 69, the President delegated certain personnel authority to the Chancellors or Equivalents of each campus within the system. Section IV. of PM 69 states in relevant part:

> Delegation of Authority to Chancellors or Equivalents
> Authority to make all other personnel actions which are not reserved to the Board or the President are hereby delegated by the President to the Chancellors or equivalents. The President may also delegate authority to the Provost of the LSU A&M campus since the President also serves as the Chancellor of that campus. This delegation may be revoked or amended by the Board or the President at any time. Delegation includes the following items **which may not be further delegated.**
> * * *
> **E. Appointment and termination of tenured faculty.   [Bold added for emphasis.]**

**REQUEST FOR ADMISSION NO. 22:**

Through "Permanent Memorandum 69, Delegation of Authority to Execute Personnel Actions," ("PM 69") the President has delegated eleven (11) specific personnel action powers to the Chancellors of the various campuses.

**REQUEST FOR ADMISSION NO. 23:**

The powers delegated by the President to the Chancellors of the various campuses is specified in PM 69, Section IV, as items A through K. PM 69 states specifically that the "items" delegated therein "**may not be further delegated except as noted.**" [Bold added.]

**REQUEST FOR ADMISSION NO. 24:**

Attached as Exhibit 5 to Plaintiff's Petition is a true and correct copy of PM 69.

**REQUEST FOR ADMISSION NO. 25:**

There is no provision in PM 69 permitting a chancellor to delegate the power to appoint and terminate tenured faculty (Item E). It is one of the personnel action matters that cannot be

further delegated. Thus, the President's authority to appoint and terminate tenured faculty can be exercised by the chancellors, but not by anyone subordinate to a chancellor.

**REQUEST FOR ADMISSION NO. 26:**

The power to appoint and to terminate tenured faculty is known as "appointing authority." The power to appoint tenured faculty and to terminate that appointment necessarily includes all matters in between that would affect the terms and conditions of the appointment, including temporarily relieving the tenured faculty member of normal job responsibilities without the faculty member's consent.

**REQUEST FOR ADMISSION NO. 27:**

Thomas Galligan is President of the LSU System and at all times relevant herein was Interim President or President.

**REQUEST FOR ADMISSION NO. 28:**

Dr. G.E. Ghali is the Chancellor of LSUHSC-S and held that office at all times relevant herein. Dr. Ghali voluntarily took an approved leave following Dr. Woerner's complaint against him, but transferred all clinical care to another hospital when Dr. Woerner was involuntarily relieved of duties.

**REQUEST FOR ADMISSION NO. 29:**

Dr. Ghali has delegated most of his Chancellor/administrative duties to Interim Chancellor David Lewis, while Dr. Ghali performs many of the clinical duties previously provided by Dr. Woerner.

**REQUEST FOR ADMISSION NO. 30:**

Dr. Ghali was the subject of Dr. Woerner's Title IX complaint and had a motive to retaliate against her. Though Dr. Ghali did not directly exercise appointing authority to prohibit Dr. Woerner from performing her duties as tenured faculty, that authority was exercised by unlawful delegation directly for Dr. Ghali's personal benefit.

**REQUEST FOR ADMISSION NO. 31:**

Dr. Ghali directly benefited from Dr. Woerner being removed from her duties as tenured faculty and placed on administrative leave. Once she was involuntarily relieved of her duties, he took over many of her duties and assigned others to his supporters.

**REQUEST FOR ADMISSION NO. 32:**

Though Dr. G.E. Ghali has resumed clinical practice at and still holds the title of Chancellor at LSUHSC-S, most of his duties of Chancellor were delegated to Interim Chancellor David Lewis, M.D.

**REQUEST FOR ADMISSION NO. 33:**

Because PM 69 prohibits a chancellor from delegating appointing authority of tenured faculty, Dr. Ghali could not delegate to Interim Chancellor Lewis the power of personnel action over tenured faculty. Interim Chancellor Lewis has never taken any action affecting Dr. Woerner's rights to perform the duties of her tenured faculty appointment.

**REQUEST FOR ADMISSION NO. 34:**

LSU President Thomas Galligan, to whom the LSU Board of Supervisors delegated their appointing authority, is the only person with lawful authority to alter the terms and conditions, even temporarily, of Dr. Woerner's tenured faculty appointment at LSUHSC-S.

**REQUEST FOR ADMISSION NO. 35:**

LSU President Thomas Galligan has never taken any action of any kind restricting Dr. Woerner's appointment as tenured faculty.

**REQUEST FOR ADMISSION NO. 36:**

Dr. Woerner did not consent to being placed on administrative leave. Dr. Woerner sent written objection immediately when she received the May 12, 2021, letter from assistant Vice-Chancellor Jones informing her that he was placing her on administrative leave and warning her to stay away from the campus and her other duty posts upon threat of enforcement action.

**REQUEST FOR ADMISSION NO. 37:**

Dr. Woerner is being prohibited from performing her duties as tenured faculty by Vice-Chancellor Charles F. Fox, III, Assistant Vice-Chancellor Edward F. Jones, and LSU's General Counsel, not one of whom is authorized by law to exercise any appointing authority over Dr. Woerner.

**REQUEST FOR ADMISSION NO. 38:**

In her Title IX complaint and complaints to the EEOC/LCHR, Dr. Woerner reported that it was widely perceived that Dr. Ghali's conduct was discriminatory and retaliatory and that Mr.

Jones had a conflict of interest that adversely affected his ability to conduct investigations of matters brought to him and this deterred complainants from coming forward with their concerns.

**REQUEST FOR ADMISSION NO. 39:**

Mr. Jones placed Dr. Woerner on administrative leave within 30 days of receiving notice that he was one of the subjects of her Title IX complaint letter.

**REQUEST FOR ADMISSION NO. 40:**

Article III of the Rules and Regulations of the Board of Supervisors specifies the types of leave that may be granted to excuse an employee from the performance of duties. There is no provision for administrative leave as a type of leave that may be requested or imposed upon an academic employee or tenured faculty.

**REQUEST FOR ADMISSION NO. 41:**

Article III, §4 of the Rules and Regulations provides that time off without loss of pay, without loss of annual leave, and without loss of sick leave may be provided pursuant to policy memoranda of the President. However, the leave policies promulgated by the President address *only* leaves of absences that have been requested by the employee and approved by the appropriate authority. The President has never promulgated any personnel leave policy that defines "administrative leave." There is nothing in the Bylaws, Rules and Regulations or PMs that defines "administrative leave."

**REQUEST FOR ADMISSION NO. 42:**

The only reference to "administrative leave" within the Rules and Regulations and policies of the LSU system is in PM 73, in which "administrative leave" is listed as a "possible corrective action." PM 73 addresses Title IX investigations, such as those conducted by Mr. Jones' office. In a Title IX investigation, "administrative leave" is **"corrective action."** [Bold added]. Imposing this type of 'corrective action" upon Dr. Woerner would be in violation of state law prohibiting retaliation against one who has engaged in protected activity. Dr. Woerner engaged in activity protected by Louisiana law when she opposed sex discrimination and harassment in the workplace and reported the complaints of others to the appropriate investigative office within the LSU System.

9

**REQUEST FOR ADMISSION NO. 43:**

Attached as Exhibit 6 to Plaintiff's Petition is a true and correct copy of excerpts of PM

73.

> DOWNER, JONES, MARINO & WILHITE
> 401 Market Street, Suite 1250
> Shreveport, LA 71101
> Tel: 318-213-4444
> Fax: 318-213-4445
> e-mail: ajones@dhw-law.com
> e-mail: pjones@dhw-law.com
>
> By: _____
> Allison A. Jones, Bar No. 16990
> Pamela R. Jones, Bar No. 19640
> ATTORNEYS FOR PLAINTIFF

PLEASE SERVE WITH PETITION.